UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODRICK TIMOTHY ROBINSON, *a.k.a.*
Timothy Rodrick Robinson,

            Plaintiff

v.

RAY SHOLTZ, LAURA MCCORMICK,
YOLANDA BUSH, STEVEN RIVARD,
MARK MCCULLICK, ROBERT VASHAW,
ROBERT STONE, SUSAN HAVELKA
and JOHN DOE(S),

            Defendants.

_____/

Case No. 2:17-cv-12675
District Judge Robert H. Cleland
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION GRANTING MDOC DEFENDANTS
SHOLTZ, McCORMICK, BUSH, McCULLICK, VASHAW, RIVARD, AND
STONE'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON
EXHAUSTION
(DE 18) and GRANTING DEFENDANT HAVELKA'S MOTION FOR
SUMMARY JUDGMENT BASED ON EXHAUSTION (DE 22)**

I.    **RECOMMENDATION**: The Court should **GRANT** Defendants Sholtz,

McCormick, Bush, McCullick, Vashaw, Rivard and Stone's motion for partial

summary judgment based on exhaustion (DE 18) and **GRANT** Defendant

Havelka's motion for summary judgment based on exhaustion (DE 22).  Plaintiff's

claims against Defendants Sholtz, McCormick and Bush should remain, as should

those against the yet to be identified John Doe "Unit 2 Correctional Officers" at St.

Louis Correctional Facility.

1

## II.    REPORT:

### A.    Background

Rodrick Timothy Robinson is currently incarcerated at the Michigan Department of Corrections (MDOC) St. Louis Correctional Facility (SLF).  On August 15, 2017, while incarcerated at SLF, Robinson filed a *pro se*, verified prisoner civil rights complaint against eight named Defendants:  (1) Ray Sholtz, (2) Laura McCormick, (3) Yolanda Bush, (4) Warden Steven Rivard, (5) Mark McCullick, (6) Robert Vashaw, (7) Robert Stone, and (8) Susan Havelka.  In addition, Plaintiff lists as defendants "Unit 2 Correctional Officers at St. Louis Correctional Facility working on [August 14, 2016] at approximately [10 a.m.][.]" (DE 1 at 5.)

Judge Cleland has referred this case to me for all pretrial matters.  Currently before the Court are the named Defendants' motions for summary judgment.  (DEs 18, 22.)  I issued orders requiring a response, which set the response deadlines for November 27, 2017 and December 28, 2017, respectively.  (DEs 20, 23.)  On January 3, 2018, Plaintiff filed a response, which appears to be directed to the earlier-filed motion for summary judgment.  (DE 24.)

### B.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a). A fact is material if it might affect the outcome of the case under governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion."). "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . . [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen her obligations under Rule 56.  Rather, "[t]he liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001)

4

(affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## C. Discussion

### 1. The facts underlying Plaintiff's complaint begin with his June 2016 Grievance against Defendant Sholtz (SLF-16-06-0579-17a)

On June 8, 2016, Plaintiff completed a grievance regarding Defendant Sholtz. (DE 1 at 6.) It was received at Step I on June 15, 2016. (DE 18-3 at 15; *see also* DE 18-3 at 4.) It appears that ARUS L. McCormick responded on June 29, 2016 and that the response was reviewed by RUM Havelka. (DE 18-3 at 16-17, DE 24 at 8-9.)

On July 8, 2016, Plaintiff completed a Step II grievance appeal, which was received at Step II on July 11, 2016. (DE 18-3 at 13.) On July 13, 2016, Warden Rivard responded, in part, as follows: "Investigation at Step II revealed that due to the nature of the alleged comment by Officer Sholtz, this grievance is being referred to Inspector Vashaw (PREA [Prison Rape Elimination Act] Investigator) for further investigation." (DE 18-3 at 14.)[1]

Plaintiff completed a Step III grievance appeal. (DE 18-3 at 13.) On September 26, 2016, Plaintiff's attempt to file a Step III grievance appeal was

---

[1] On the same date, SLF-16-07-18063-PREA-P was initiated. The form, signed by both Inspector Vashaw and Plaintiff, notifies Plaintiff that his allegations "have been forwarded to Lt. Shaw for investigation in accordance with" certain MDOC policy directives. (DE 24 at 7.)

returned with the directions that Plaintiff needed to include the Step I response, or give a valid reason why it could not be included, and that Plaintiff needed to include "a legible reason for appeal to Step III." (DE 18-3 at 18; *see also* DE 18-3 at 6.) Plaintiff's Step III grievance appeal was received at Step III on October 10, 2016. (DE 18-3 at 4, 13.) The Step III grievance decision is dated October 24, 2016. (DE 18-3 at 4, 12.) (*See also* DE 1 at 6.)

### 2. Subsequently, Plaintiff feared for his safety.

Plaintiff claims that, during his grievance-related interview(s), he provided "witnesses to C/O Sholtz's actions," and noted his "fear of violence due to anonymous 'kites' [he] would randomly [receive] under [his] cell door from gangs ordering payments for protection from attacks." Plaintiff claims that, on August 14, 2016, Unit 2 Corrections Officers allowed an inmate into Plaintiff's cell, and the inmate "stole over $200 worth of . . . personal property." According to Plaintiff, the theft was captured on video footage, and Defendant Sholtz "admitted to 'some' procedural violations, but denied others with regard to the prisoner grievance response." (DE 1 at 6.)

Plaintiff further alleges that, on August 17, 2016, he was "attacked by another inmate." (DE 1 at 6.) On August 25, 2016, a hearing was held, at which point Plaintiff "notified staff of the events leading up to the attack and the reason relayed to [him] by the inmate as to why he was attacking [Plaintiff] and that the

events w[ould] continue as long as [Plaintiff is] at [SLF]." (*Id*.)[2] (*See also* DE 24 at 1 ¶ I(C).)

Apparently referring to Defendant McCullick's September 27, 2016 Step II grievance response in SLF-16-09-0946-19F (*see* DE 18-3 at 37-38), Plaintiff alleges that he "tried to be transferred or placed in segregation." (DE 1 at 7.) Through numerous interviews and kites, Plaintiff claims to have "notified staff of [his] fears and the reasons for [his] fears." (*Id*.)

### 3. Plaintiff seeks "a safe environment . . . ."

According to Plaintiff, evidence in his possession and in SLF files supports "the numerous attempts to notify SLF Administration of the targeting by C/O Sholtz and inmates due to C/O Sholtz['s] comments." (DE 1 at 8.) In Plaintiff's own words, this lawsuit "is solely based upon the deliberate deprivation by SLF Administration to ensure a safe enviro[n]ment by *systematically* ignoring, den[y]ing, and neglecting such . . . ." (DE 1 at 10 (emphasis added).)

---

[2] These events are illuminated by some of the attachments to Plaintiff's January 3, 2018 response. On August 17, 2016, Plaintiff was issued a misconduct report for fighting, to which he pleaded "not guilty." Following an August 25, 2016 hearing, Plaintiff was found guilty and received 10 days of detention and 15 days loss of privileges. (DE 24 at 10.) Thereafter, on August 31, 2016, Plaintiff was classified to administrative segregation for an "inability to be managed with [general population] privileges[.]" By way of a September 28, 2016 segregation behavior review, Defendants Vashaw and Stone recommended reclassification to general population, which appears to have been approved the following day by Defendant McCullick. (DE 24 at 11.)

Based on multiple case citations, it is clear that Plaintiff's causes of action against Defendants are based upon an alleged failure to protect.  (*See* DE 1 at 8-10.)[3]  In particular, Plaintiff claims that:

- **Defendant Sholtz** violated MDOC PD 03.03.130 ("Humane Treatment And Living Conditions For Prisoners"), as described in a grievance – presumably SLF-16-06-0579-17a (DE 18-3 at 15).

- **Defendant McCormick** had been notified of Defendant Sholtz's "inappropriate behavior" and of the threatening "kites" he was receiving.

- **Unit 2 guards** deliberately opened Plaintiff's cell door and aided and abetted "in the felon[i]ous theft of [his] personal property worth more than $200."

- He "sent 3 kites to ARUS **[Defendant] Bush**," and, during an interview, "notified her of 'all' events leading up to the attack by another inmate[,]" as well as Plaintiff's "fear of persistence by gang members of threats and extortion orders."

- He and ARUS Walworth, as well as **Defendants McCullick, Stone, Vashaw, McCormick and Havelka**, were allegedly in attendance at a Security Classification Committee (SCC) hearing – presumably the one that took place on September 28,

---

[3] *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."); *Commonwealth of Pennsylvania v. State of W. Virginia*, 262 U.S. 553, 593, *aff'd sub nom. Com. of Pennsylvania v. State of W. Virginia*, 263 U.S. 350 (1923) ("One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough."); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

> 2016 (DE 24 at 11) – at which Plaintiff was "placed back in general population . . . [,]" despite Plaintiff's protest and "notification to them of all events leading up to [that point] and [his] concerns for the future."

(DE 1 at 8-10.)

Plaintiff contends that Defendant Sholtz's comments initiated a chain reaction, which included:  **(a)** inmates hearing the comments; **(b)** Plaintiff's receipt of threatening "kites;" **(c)** the theft of his property, aided by SLF staff; and **(d)** an attack by a gang member.  (DE 1 at 10.)  Plaintiff claims that, as of August 1, 2017, he was in the same housing unit in which Defendant Sholtz regularly works, and he still makes "inappropriate and offensive comments towards" Plaintiff. Plaintiff also claims to be in the same housing unit as the inmate who attacked him. (DE 1 at 9.)  He is concerned for his safety and sexual privacy.  (DE 1 at 9-10.) Plaintiff seeks injunctive relief (in the form of transfer to another facility) and a jury trial ("to deter future prisoner safety deprivation[,]" and "to reasonabl[y] reward [him] for the pain, suffering, and rights deprivation.").  (DE 1 at 11.)

### 4.    Defendants do not seek dismissal of Plaintiff's claims against Defendants Sholtz, McCormick and Bush.

Preliminarily, Defendants do not contest that Plaintiff properly exhausted his administrative remedies as to his claim that Defendant Sholtz's "comment placed him at risk of harm from other prisoners."  Nor do Defendants contest that Plaintiff exhausted his administrative remedies "with respect to his claim that he notified

Defendants McCormick and Bush of his fear, but failed to receive a response."
(DE 18 at 12; *see also* DE 18 at 17.)

Although Defendants make these concessions as to Plaintiff's claims against
Defendants Sholtz, McCormick and Bush, Defendants also use a "catch all"
argument that Plaintiff "failed to exhaust his administrative remedies with respect
to *all other claims*, and any claim against the other Defendants." (DE 18 at 12
(emphasis added).) However, "failure to exhaust is an affirmative defense under
the PLRA, and that inmates are not required to specially plead or demonstrate
exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). As
such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678
F.3d 452, 456 (6th Cir. 2012). Without more, and especially considering that the
title of Defendants' motion is for "partial summary judgment based on
exhaustion," (DE 18 at 1), the Court should conclude that Defendants have not met
their burden to successfully challenge *any* of Plaintiff's claims against Defendants
Sholtz, McCormick and Bush that are contained within the August 15, 2017
complaint on the basis of failure to exhaust.

> **5.    Plaintiff has failed to exhaust his administrative remedies as
> to his claims against Defendants McCullick, Vashaw, Stone
> and Havelka.**
>
> **a.    Exhaustion**

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones*, 549 U.S. at 203-04.  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits."  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court."  *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Even where a prisoner has made some attempts to go through the

prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint and add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017). Moreover, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.

### b.     There seem to be four relevant grievances.

Defendants seek dismissal of Plaintiff's claims against Defendants Rivard, McCullick, Vashaw, Stone and Havelka for failure to exhaust administrative remedies as to his claims against them, pointing out that none of them "are named in the Step I grievance report." (DE 18 at 17-19.) Defendants have provided Plaintiff's MDOC Prisoner Step III Grievance Report, which lists seven SLF grievance identifiers. (DE 18-3 at 4-6.) Two of these grievances – SLF-15-12-

1620-09z and SLF-16-03-0267-19c - pre-date the June 8, 2016 event from which

the facts underlying Plaintiff's complaint stem.  Another of these grievances - SLF-

16-09-1037-28I - is related to the alleged events of September 20, 2016 involving

someone who is not a defendant in this case.  (DE 18-3 at 7-11.)  Thus, it seems

that, at most, four grievances concern issues that are the subject of Plaintiff's

complaint.  These will be addressed, in detail, below.

### c.   Some of the relevant grievances name some Defendants at Step I.

As the appropriate MDOC Policy Directive provides, "[i]nformation

provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who,

what, when, where, why, how). Dates, times, places, and names of all those

involved in the issue being grieved are to be included."  MDOC PD 03.02.130

("Prisoner/Parolee Grievances"), effective July 9, 2007, ¶ R (emphasis in original).

Defendants claim that Defendants Rivard, McCullick, Vashaw, Stone and Havelka

are not named in a Step I grievance.  (DE 18 at 18.)  This is not entirely accurate:

(a)   **SLF-16-06-0579-17a**, which concerns the events of June 8, 2016, names Sholtz and McCormick at Step I.  (DE 18-3 at 15, 34);

(b)   **SLF-16-09-0946-19F**, which seems to concern the events of August 14, 2016, as it mentions the "2 Unit officers" and seeks return of or reimbursement for Plaintiff's stolen property (DE 18-3 at 39);

(c)   **SLF-16-08(09)-0947-28A**, specifically mentions several people, *including McCullick* and the "2-Unit C/O's," and

13

concerns, among other things, his attempts to recover his property in the wake of the August 14, 2016 theft from his cell and "being left in the hostile situation, unprotected when hostile issues were apparent to staff."  (DE 18-3 at 22, DE 24 at 12); and,

**(d)**    **SLF-16-09-0979-28I**, names several people, *among them Defendant Vashaw*, and concerns a purported need to file separate grievances and, seemingly, Plaintiff's PREA grievance (presumably the one received on July 13, 2016 and stemming from the Step II response in SLF-16-06-0579-17a), including his attempt to appeal the decision to Step II.  (DE 18-3 at 30; *see also* DE 24 at 7 (SLF-16-07-18063-PREA-P)).[4]

Thus, at the very least, SLF-16-08(09)-0947-28A mentions Defendant

McCullick and SLF-16-09-0979-28J mentions Defendant Vashaw.

> **d.    These four grievances do not concern Plaintiff's claims against Defendants McCullick, Vashaw, Stone and Havelka, which seem to be based upon their participation in the September 28, 2016 SCC review.**

---

[4] *See* MDOC PD 03.03.140 ("Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners"), effective April 24, 2017, ¶¶ EE-QQ ("PREA Grievances").  This version of the policy directive expressly mentions the generic grievance procedure as follows:  "Any PREA Grievance containing issues other than sexual abuse shall be denied and returned to the prisoner with instructions to submit the grievance in accordance with PD 03.02.130 'Prisoner/Parolee Grievances.'  Any PREA grievance containing multiple issues, which include sexual abuse and non-sexual abuse issues, shall be processed in accordance with this policy in order to address the allegations of sexual abuse only.  The prisoner shall be notified in the PREA Grievance response that s/he must submit a new grievance in accordance with PD 03.02.130 to address any concerns not related to sexual abuse."  *Id*. ¶ II.

Each of the four relevant grievances was received at Step I between June 15, 2016 and September 8, 2016. (DE 18-3 at 4-5.) Yet, it seems that Plaintiff's claims against Defendants McCullick, Vashaw, Stone and Havelka are based upon their participation in Plaintiff's September 28, 2016 SCC hearing / review. (DE 1 at 9, DE 24 at 11; *see also* DE 24 at 1 ¶ I(D), DE 24 at 2 ¶ I(F).) As such, the four relevant grievances – each of which was initiated *prior to* the September 28, 2016 review - could not have operated to exhaust Plaintiff's available administrative remedies as to Plaintiff's claims against Defendants based upon the subsequent, September 28, 2016 SCC hearing. (*See also* DE 18 at 18, DE 22 at 9.) Thus, to the extent Plaintiff's claims against Defendants McCullick, Vashaw, Stone and Havelka are based upon their participation in the September 28, 2016 SCC review, such claims should be dismissed as unexhausted.

It may be true, as Plaintiff responds, that he specifically names certain Defendants and their involvement among the various exhibits. (DE 24 at 2.) It may also be true, as Plaintiff responds, that Defendant Vashaw was made aware of Defendant Sholtz's alleged behavior and the allegedly resulting inmate threats during the interview associated with the July 13, 2016 PREA grievance form. (DE 24 at 2, 7; *see also* DE 24 at 1 ¶¶ I(A), I(B).) It may further be true that Defendant Vashaw was notified of these matters "throughout the grievance process" and the reclassification hearing, at which point Plaintiff claims to have "verbally notified

Defendants [Vashaw, Stone, and Havelka]," that he was in fear of "further attacks and reprisal from inmates an[d] guards."  (DE 24 at 3.)

Nonetheless, to the extent Plaintiff's claims against Defendants McCullick, Stone, Vashaw, and Havelka are based upon their participation in the September 28, 2016 SCC hearing / review (DE 1 at 9), the review does not appear to have been the subject of a relevant, exhausted grievance.  This is true, even if Plaintiff's claim against Defendants McCullick, Stone, Vashaw and Havelka is that, at the time of their September 28, 2016 participation, they were informed by their various responses to grievances, such as Defendant Vashaw demonstrating through his September 7, 2016 Step I response to SLF-16-09-0947-28A that he had been informed.  (*See*, *e.g.*, DE 24 at 2 ¶ I(G).)  In other words, it does not appear that Plaintiff has grieved his allegation that, "[o]ver [his] verbal objections, [he] was placed in general population, specifically in the 'SAME' housing unit with the inmate who attacked [him]."  (DE 24 at 3.)[5]  Further, while Plaintiff alleges and

---

[5] True, the prisoner/parolee grievance process provides that some types of hearing decisions are non-grievable.  *See* MDOC PD 03.02.130 ¶ F(2),(3),(4).  However, even though Plaintiff alleges that he has taken "'ALL' avail[a]ble options to ensure [his] safety[,]" he does not seem to allege that the grievance process was *unavailable* as to the claims underlying his complaint, such as the September 28, 2016 segregation behavior review (signed by Vashaw, Stone and McCullick and in which Plaintiff alleges that Havelka played a part).  (*See* DE 1 at 9-10; *see also* DE 24 at 11).  Perhaps more importantly, considering that exhaustion is an affirmative defense, while Plaintiff emphasizes the words "where available" in his response's discussion of administrative remedies, he does so only to explain that "filing a grievance against 'each' defendant would be 'immediately' denied . . . for filing

responds that Defendants had *knowledge* of relevant facts through various sources, such as kites and grievances, (*see* DE 1 at 6-10, DE 24 at 1-3), no relevant, exhausted *grievance* addresses Plaintiff's claims against Defendants McCullick, Vashaw, Stone and Havelka, which, again, seem to be based upon their participation in the September 28, 2016 SCC review (*see* DE 1 at 9).  *See, e.g., Jones*, 549 U.S. at 219 ("the benefits of exhaustion . . . include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."); *McCloy v. Correction Med. Servs.*, 794 F. Supp. 2d 743, 749 (E.D. Mich. 2011) (Lawson, J., adopting in part report and recommendation of Hluchaniuk, M.J.) ("'[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.'") (quoting *Bell v. Konteh,* 450 F.3d 651, 654 (6th Cir. 2006)).

---

multiple duplicate grievances."  (*See* DE 24 at 2; *see also* MDOC PD 03.02.130 ¶ G(1).)  He points to nothing which would lead the Court to believe that, with respect to his unexhausted claims against Defendants McCullick, Vashaw, Stone and Havelka (which, as noted above, seem to be based upon their participation in the September 28, 2016 SCC review (*see* DE 1 at 9)), the process itself was unavailable to him as an *initial* grievance.  Again, these claims do not appear to have been the subject of *any* relevant, exhausted *grievance*.

In sum, to the extent Plaintiff's claims against Defendants McCullick, Vashaw, Stone and Havelka concern their participation in the September 28, 2016 SCC review (DE 1 at 9), the MDOC has not been provided with "the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)." MDOC PD 03.02.130 ¶ R.  *See also Woodford*, 548 U.S. at 89 (the two main purposes of exhausting administrative remedies are protecting "administrative agency authority" and promoting efficiency).  "The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint," *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994), and, whatever other exhausted claims Plaintiff may have against any of the Defendants, the Court need only consider those set forth in Plaintiff's initiating, operative complaint.  *See also* Fed. R. Civ. P. 8(a)(2).

### 6.    Plaintiff has failed to state a claim against Defendant Rivard upon which relief can be granted.

To be sure, the Court disagrees with Defendants' characterization that "the only factual basis for [Plaintiff's] claims against . . . Rivard" is "the alleged 'security classification committee hearing[.]'"  (DE 18 at 18.)  Rather, although Plaintiff's exact claims against Defendant Rivard are unclear, the Court suspects that any such claims relate either to his supervisory role as SLF's Warden and/or to his role in responding to the Step II grievance in SLF-16-06-0579-17A (DE 18-3 at 13-14, 33).  The Court further suspects that Plaintiff's claims against Defendants

are based, at least in part, upon alleged "inaction," as he claims that his lawsuit alleges a "'systematic' denial of rights[,]" and that facts warranting action were "suppress[ed] and/or *ignor[ed]* . . . ."  (DE 24 at 3 (emphasis added).)  He also suggests that Defendants were "silen[t]" when there was "a 'legal' obligation to perform a duty."  (*Id.*)

Where Defendants "only roles in this action involve the denial of administrative grievances or the failure to act[,] . . . they cannot be liable under § 1983."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Here, it is worth repeating that Warden Rivard's July 13, 2016 Step II Grievance Response in SLF-16-06-0579-17A referred the grievance "to Inspector Vashaw (PREA Investigator) for further investigation."  (DE 18-3 at 14.)  Moreover,

> . . . a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).  Thus, any claims against Defendant Rivard that are solely based upon either his supervisory role (i.e., no personal involvement) or his denial of a grievance should be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6), 42 U.S.C. § 1997e(c).

### 7.    Responding to grievances

In his complaint and response, Plaintiff references grievance responses by certain Defendants.  (*See*, *e.g.*, DE 1 at 6-10, DE 24 at 1-3.).  The Court's own review reveals the following:

- Defendants McCormick and Havelka's response to SLF-16-06-0579-17a (DE 18-3 at 15-17, 34),

- Defendant McCullick's responses to SLF-16-09-0947-28A, SLF-16-09-0979-28J and SLF-16-09-0946-19F (DE 18-3 at 20-21, 28-29, 36-38),

- Defendant Vashaw's review of SLF-16-09-0947-28A (DE 18-3 at 22),

- Defendant Stone's review of SLF-16-09-0979-28J (DE 18-3 at 30), and

- Defendant Bush's response to SLF-16-09-0946-19F (DE 18-3 at 39).

In the instant motions, Defendants contend that "[d]enying a grievance is not in-and-of-itself sufficient to create liability[,]"and that "being named as a reviewer alone is not sufficient to establish liability."  (DE 18 at 18, DE 22 at 9.)  Thus, notwithstanding the above conclusion that Plaintiff's claims against Defendants Scholtz, McCormick and Bush should survive the pending dispositive motions (as Defendants do not herein seek dismissal of Plaintiff's claims against these defendants), it is appropriate to observe that claims against them *solely* based upon "the denial of administrative grievances" could meet a fate similar to Plaintiff's above-described and presumed comparable claim(s) against Defendant Rivard.

*Shehee*, 199 F.3d at 300; *see also Hunter v. Custin*, No. 1:15-CV-593, 2015 WL 8541638, at *10 (W.D. Mich. Dec. 10, 2015) ("Plaintiff does not have a constitutional right to an effective grievance procedure, and Heffelbower cannot be held liable for the unconstitutional conduct of other officers or for failing to correct them in response to Plaintiff's grievances.").

### D.   Conclusion

Plaintiff brings this lawsuit against eight identified individuals, as well as "Unit 2 Correctional Officers" at SLF who were working on August 14, 2016. (DE 1 at 5.)  The MDOC Defendants' motion and the motion of Defendant Havelka (which "adopts and incorporates the arguments advanced" in her co-defendants' motion) do not challenge Plaintiff's claims as to Defendants Sholtz, McCormick and Bush.  Moreover, Plaintiff's claims against the unidentified Defendants are not addressed herein.

However, the Court should **GRANT** the pending motions to dismiss (DEs 18, 22) to the extent they challenge Plaintiff's exhaustion of administrative remedies as to his claims against Defendants McCullick, Vashaw, Stone and Havelka, which appear to be based upon their participation in Plaintiff's September 28, 2016 SCC hearing / review (*see* DE 1 at 9, DE 24 at 11).  Additionally, any claims against Defendant Rivard that are solely based upon either his supervisory role (i.e., no personal involvement) or his denial of a grievance should be

dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6), 42 U.S.C. § 1997e(c).

## III. PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 29, 2018                    s/*Anthony P. Patti*
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on May 29, 2018, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti